# CIRCUIT COURT OF THE CITY OF NORFOLK

Gregory Richardson
and Patricia A. Richardson

v.

Virginia Electric a
nd Power Co.,
Cox Virginia Telecom, Inc.
and Cox Communications Hampton

Case No. (Civil) CL14-6418

By Judge Everett A. Martin, Jr.

May 1, 2015

The facts adduced at the hearing on April 23 are not controverted; the legal consequences of those facts are as follows. In 1958, Virginia Electric and Power Company ("VEPCO") acquired an easement over what is now the plaintiffs' property. Sometime before 2002, VEPCO erected a 100 foot high steel pole on the easement.

In 2002, VEPCO allowed T-Mobile to place nine cellular telephone antennas atop the pole. This required the attachment of a fifteen foot high structure to the top of the pole. T-Mobile also erected a ground facility (the "facility") within a twelve by twenty-one foot chain link fence in the easement, but on property adjoining that of the plaintiffs. From the facility, T-Mobile ran eighteen 7/8 inch cables within the easement and under about twenty-five feet of the plaintiffs' land. These cables came out of the ground very close to the pole and then ran, within a conduit attached to the outside of the pole, to the nine antennas.

In 2009, T-Mobile replaced three of nine antennas and added some support pieces to the antennas. It also added to the facility. It is agreed that any claim for damage to the plaintiffs' property by the 2002 and 2009 construction is barred by the statute of limitations. *Reachmeade v. City of Richmond*, 267 Va. 598, 594 S.E.2d 606 (2004).

In 2012, T-Mobile replaced six antennas and added one 1¼ inch underground fiber optic cable in the same area as the eighteen existing

cables. The underground portion of the new cable on the plaintiffs' land is also about twenty-five feet in length. As it is a law of science that no two forms of matter can occupy the same space at the same time, the installation of the fiber optic cable required that either a trench or tunnel be dug in the easement.

Photographs introduced at the hearing show that the location of the fiber optic cable is no garden spot. It runs from the facility to the pole; vegetation around it is high; it is close to two parallel railroad tracks; it is separated from the plaintiffs' home by a row of trees. To describe whatever damage its installation caused the plaintiffs' land as *de minimis* would be most generous.

Nonetheless, in *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419 (1982), the Supreme Court answered in the affirmative "the question whether a minor but permanent physical occupation of an owner's property authorized by government constitutes a 'taking' of property for which just compensation is due... ." 458 U.S. at 421. The taking in *Loretto* was slightly greater than that here.

The defendants contend that the damage occurred in 2002 and that what occurred in 2012 was merely an upgrade to existing service. I agree with respect to the replacement of six antennas atop a now 115 foot pole the plaintiffs do not own. I do not agree with respect to the 2012 installation of the fiber optic cable. That was a new and additional physical occupation of (a very small part of) the plaintiffs' property. It was additional damage to that which occurred in 2002. It inflicted a new injury (however minuscule it may be), and it gave rise to a new and separate cause of action. *Hampton Roads Sanitation Dist. v. McDonnell*, 234 Va. 235, 360 S.E.2d 841 (1987).

July 30, 2015

The plaintiffs' predecessor in title granted an easement to VEPCO in 1958. The terms pertinent to this dispute are:

> Owner grants unto Company, its successors, and assigns, the perpetual right, privilege, and easement of right of way as hereinafter described to construct, operate, and maintain one line of poles, as Company may from time to time deem expedient or advisable, located on the right of way hereinafter described, for the purpose of transmitting electric power by one or more circuits, including all wires, poles, attachments, ground connections, equipment, accessories, and appurtenances desirable in connection therewith (hereinafter referred to as "facilities").
>
> Company shall have the right to inspect, rebuild, remove, repair, improve, relocate on the right of way above described, and make such changes, alterations, substitutions, additions

to or extensions of its facilities as Company may from time to time deem advisable... .

At the hearing on June 23, the plaintiffs conceded VEPCO's easement was in gross and exclusive. VEPCO conceded that the installation of cellular telephone equipment is not the transmission of electric power. Neither party claims the easement is ambiguous. The issues, as the parties have framed them, are: (1) is VEPCO's easement apportionable, and (2), if so, can it be apportioned for the use T-Mobile is now making of it?

When, as here, the deed creating the easement is unambiguous, the rights of the parties must be ascertained from the words of the deed and the extent of the easement cannot be determined from any other source. *Gordon v. Hoy*, 211 Va. 539, 541, 178 S.E.2d 495, 496 (1971).

The principal case discussed at argument, *Hise v. BARC*, 254 Va. 341, 492 S.E.2d 154 (1997), involved both a prescriptive easement and an enlargement of it acquired by condemnation. BARC had used the prescriptive easement for the transmission of electricity, and it had allowed other companies to provide telephone and cable television service from its poles. For this reason, the Court found that BARC construed its prescriptive easement as having a right of apportionment and that the Hises had acquiesced in that construction in that they had used the cable television service.

In determining the easement acquired in the eminent domain proceeding was apportionable, the Court relied on comment c of § 493 of the *Restatement (First) of Property* (1944) ("the fact that apportionability increases the value of the easement to its owner, tends to the inference in the usual case that the easement was intended in its creation to be apportionable") and BARC's right to "improve" and to make "additions to or extensions of its facilities." VEPCO notes the same rights are present in the easement at issue.

However, "facilities" in the present easement is defined as "one line of poles, as [VEPCO] may from time to time deem expedient or advisable ... for the purpose of transmitting electric power by one or more circuits, including all wires ... equipment, accessories, and appurtenances desirable in connection therewith." "In connection therewith" refers to "the purpose of transmitting electric power" by "one line of poles." Thus VEPCO's rights to "improve" and "make ... additions to or extensions of its facilities" are also limited to "the purpose of transmitting electric power" by "one line of poles." The *Hise* opinion does not state how "facilities" was defined in BARC's easement.

Some courts, perhaps the majority, that have considered the issue have construed easements by grant broadly when an easement holder's license to a third party is not inconsistent with the original grant, "serves the public interest," and does not unduly burden the owner of the servient estate. *Hoffman v. Capitol Cablevision System*, 52 A.D.2d 313, 383 N.Y.S.2d 674 (1976) (easement for "the distribution of electricity and messages" could

be apportioned to install cable television equipment); *Henley v. Continental Cablevision*, 692 S.W.2d 825 (Mo. App. 1985) (easement for "telephone and electric light purposes" could be apportioned to transmit television programs); *Witteman v. Jack Berry Cable*, 228 Cal. Rptr. 584, 192 Cal. App. 3d 1619 (1986) (easement for "transmission of electrical energy and for telephone lines" could be apportioned for cable television).

Other courts have limited an easement by grant to the use stated therein. *Marcus Cable v. Krohn*, 90 S.W.3d 697 (Tex. 2002) (easement for "an electric transmission or distribution line or system" not apportionable to add cable television lines).

The facilitation of communication is certainly a public policy Virginia courts would support; however, a stronger and long-standing policy is the refusal of Virginia's courts to re-write an agreement between parties. *Dewberry & Davis v. C3NS, Inc.*, 284 Va. 485, 732 S.E.2d 239 (2012); *Ayres v. Harleysville Mutual Cas. Co.*, 172 Va. 383, 2 S.E.2d 303 (1939).

VEPCO's apportioning of its easement to T-Mobile certainly makes the easement more valuable to VEPCO. However, even if I assume VEPCO's easement is apportionable, VEPCO may not apportion it for a use it did not receive from its grantor. Comment c of § 493 of the *Restatement, supra*, supports this in addressing the effect on and right of the owner of the servient estate. "He is affected in some degree by any increase in the use authorized by the easement. He is entitled, therefore, to prohibit any use made under it in excess of that authorized by the manner or terms of its creation." The only use VEPCO received was for the transmission of electric power. See *Multi-Channel TV v. Satterwhite*, 2000 Va. Cir. lexis 650 (Nelson Co. 2000).

I overrule the demurrer.